# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| DARRYL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-03248 |
| | ) | |
| LIEUTENANT BRYON LAW, | ) | |
| COUNSELOR KEVIN | ) | |
| BLOOMFIELD, SERGEANT | ) | |
| JAMES MILLER, LIEUTENANT | ) | |
| ROBERT FISHEL, | ) | |
| WARDEN JEFF KORTE, OFFICER | ) | |
| B. MOUNTAIN, OFFICER L. | ) | |
| EDGAR, WESTERN ILLINOIS | ) | |
| CORRECTIONAL CENTER, | ) | |
| ILLINOISDEPARTMENT | ) | |
| OF CORRECTIONS | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Darryl Williams ("Plaintiff), by and through his counsel, Barnes & Thornburg

LLP, complains of the above listed Defendants as follows:

### INTRODUCTION

1.     Plaintiff is, as of the filing of this Second Amended Complaint and during all

relevant time periods referenced herein, an Illinois resident incarcerated within the Illinois prison

system.

2.     While Plaintiff was incarcerated at Western Illinois Correctional Center he was

severely and maliciously beaten by Sergeant Miller, Lieutenant Law and various other

correctional officers under the supervision of Lieutenant Law (the "Incident").

3.	Following the Incident, Plaintiff was refused medical care by Sergeant Miller, Officer Mountain and Officer Edgar, all under the supervision of Lieutenant Law.

4.	Lieutenant Fishel, Lieutenant Law and correctional counselor Bloomfield retaliated against Plaintiff for filing grievances and a lawsuit in connection with the Incident.

5.	By its order dated November 20, 2014, this Court ordered Defendants to preserve all video surveillance evidence of the Incident. Defendants, through an intentional course of conduct and with the purpose of denying Plaintiff access to this evidence, destroyed all video surveillance evidence depicting the Incident. The unconstitutional course of conduct is ongoing, and continues to place the rights of similarly situated individuals in peril.

## PARTIES

6.	At the time of the Incident, on April 17, 2014, Plaintiff was incarcerated at Western Illinois Correctional Center ("WICC"). Plaintiff was transferred to Danville Correctional Center on February 17, 2016.

7.	Upon information and belief, at all times relevant hereto, Defendant Miller was employed at Western Illinois Correctional Center as a correctional officer. Defendant Miller is being sued in his individual capacity.

8.	Upon information and belief, at all times relevant hereto, Defendant Law was employed at Western Illinois Correctional Center as a correctional officer. Defendant Law is being sued in his individual capacity.

9.	Upon information and belief, at all times relevant hereto, Defendant Fishel was employed at Western Illinois Correctional Center as a correctional officer. Defendant Fishel is being sued in her individual capacity.

10.	Upon information and belief, at all times relevant hereto, Defendant Bloomfield

was employed at Western Illinois Correctional Center as a correctional counselor. Defendant Bloomfield is being sued in his individual capacity.

11.     Upon information and belief, at all times relevant hereto, Defendant Edgar was employed at Western Illinois Correctional Center as a correctional officer. Defendant Edgar is being sued in his individual capacity.

12.     Upon information and belief, at all times relevant hereto, Defendant Mountain was employed at Western Illinois Correctional Center as a correctional officer. Defendant Mountain is being sued in his individual capacity.

13.     Upon information and belief, at all times relevant hereto, Defendant Korte was employed at Western Illinois Correctional Center as Warden. Defendant Korte is being sued in his official capacity.

14.     Western Illinois Correctional Center is a prison facility under the control of the Illinois Department of Corrections.

## JURISDICTION AND VENUE

15.     This action is brought pursuant to 42 U.S.C. Section 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343(a).

16.     Venue is proper in this district under 28 U.S.C. 1391(b) for the following reasons:

        a.      Upon information and belief, all defendants reside in Illinois;

        b.      Upon information and belief, all defendants reside or work in this District; and

        c.      The events or omissions giving rise to this action occurred in this District.

17.     This Court has supplemental jurisdiction over Plaintiff's Illinois common law claim pursuant to 28 U.S.C. 1367(a) because it is formed out of the same case or controversy as Plaintiff's claims brought pursuant to 42 U.S.C. Section 1983.

## FACTS RELEVANT TO ALL COUNTS

18.     On April 17, 2014, Plaintiff Williams was an inmate at WICC. Sergeant Miller and other correctional officers under the supervision and control of Lieutenant Law conducted a shakedown of Plaintiff's Housing Unit 2, Wing C, whereby more than 100 inmates were marched into the adjacent gymnasium. The inmates, including Plaintiff, were ordered to stand, handcuffed behind their backs, facing the wall of the gymnasium for more than 2 hours. The inmates were not allowed to speak or make requests of the correctional officers overseeing the inmate movement.

19.     After the shakedown, the inmates were marched, in single file, back to their housing unit. At all times, Plaintiff complied with correctional officer orders and proceeded through the facility in an orderly fashion. Sergeant Miller, maliciously and without provocation, pulled Plaintiff out of the marching line by his neck and head. Sergeant Miller forcefully shoved Plaintiff into a nearby gate, commanded other correctional officers to restrain him and, with the assistance of Lieutenant Law and several other officers, beat him with batons and forcefully placed handcuffs on him.

20.     A correctional officer then lifted Plaintiff's handcuffed and bound arms above his head in order to expose his bare skin to the batons. The correctional officers continued to beat Plaintiff with their batons. As a result, Plaintiff's shoulders, back and wrist were severely injured. Plaintiff suffered severe bruising and swelling to his neck, back, wrists and hands. This interaction was captured on WICC's video surveillance system.

21.     While being escorted back to his cell, Plaintiff desperately pleaded with Sergeant Miller to obtain medical treatment. Sergeant Miller ignored Plaintiff's requests for medical treatment and instead left him in his cell. Plaintiff's pain worsened and he began experiencing

4

numbness in his hands and fingers.

22.     After Sergeant Miller left Plaintiff unattended, Correctional Officer Edgar and Correctional Officer Mountain walked past Plaintiff's cell. Plaintiff made another plea for medical treatment. Both Defendant Edgar and Defendant Mountain refused Plaintiff medical treatment. It was not until Faculty Nurse Johnson, making routine rounds, saw the extent and severity of Plaintiff's injuries that he was taken to WICC's medical center for treatment.

23.     Following the Incident, Plaintiff continued to suffer physical pain due to the beating by Sergeant Miller and Lieutenant Law. Plaintiff's physical condition worsened: he experienced numbness in his hand and fingers; he could not make a fist without excruciating pain; he had limited movement in his wrists; and the bruising on his back and neck had gotten significantly worse. Due to Plaintiff's worsening physical condition, he was transported to a local hospital on April 19, 2014 for further evaluation. Plaintiff exhibited severe swelling in his hand that required x-rays. The local hospital also examined Plaintiff's bruising and swelling of his neck, back and wrists. Plaintiff was released from the local hospital on April 21, 2014 and ordered to wear an ace bandage around his wrist and arm, and to refrain from heavy lifting for a period of 30 days.  He was also ordered to use the lower bunk in his cell for the same 30 day period.  Correctional officers in his housing unit, as well as his counselor, would have been made aware of these limitations.

24.     Once released from the local hospital, Plaintiff met with correctional counselor Bloomfield on April 21, 2014 to request a transfer. Defendant Bloomfield asked Plaintiff why he had bandages on his arm and wrist area. Plaintiff informed Defendant Bloomfield of the Incident that occurred on April 17.

25.     Plaintiff subsequently filed a grievance on May 7, 2014 regarding the Incident,

attached hereto as Exhibit A, in accordance with WICC procedures and Illinois regulations. Despite the cruel and intense interaction between Plaintiff and Defendants, and the extent of his injuries, no member of the tactical team filed an incident report with WICC. Plaintiff specifically stated in his grievance that he believed that Sergeant Miller and the other correctional officers violated his constitutional rights against cruel and unusual punishment.

26.     Over 60 days passed and Plaintiff did not receive a response regarding the grievance he filed on May 7, 2014. On July 14, 2014 Plaintiff again met with correctional counselor Bloomfield. Plaintiff inquired about his grievance filed on May 7, 2014. Plaintiff informed Defendant Bloomfield that the grievance concerned the Incident and was filed over 60 days ago. Defendant Bloomfield took no further action regarding Plaintiff's grievance.

27.     Plaintiff then filed an affidavit on July 23, 2014, attached hereto as Exhibit B, and officially requested that his grievance be addressed. Plaintiff's grievance went ignored, yet again, and Defendants offered no administrative review of, nor provided any response to, Plaintiff's grievance.

28.     Having thus exhausted all administrative remedies following the Incident, Plaintiff, pro se and without the assistance of counsel, filed his initial Complaint on August 8, 2014, seeking relief pursuant to an excessive force claim against Lieutenant Law and various other correctional officers, then designated as John Does. This Court entered an Order on November 20, 2014 directing Defendants to preserve all video surveillance evidence of the Incident.

29.     Following the filing of Plaintiff's claim, Defendants, both individually and collectively, began retaliating against Plaintiff for exercising his right to bring a claim against them. On February 10, 2015, Plaintiff stood outside of his cell with his legal file for this matter

6

in hand. At all times, Plaintiff was not disruptive and followed orders from correctional officers. Plaintiff was approached by Lieutenant Fishel and Lieutenant Law. Liutenant Fishel and Lieutenant Law proceeded to confiscate Plaintiff's file. Plaintiff explained to both Lieutenants the nature of the documents in his file and asked for their return. Lieutenant Fishel and Lieutenant Law opened the file, observed the legal documents, and, upon realizing that they were documents pertaining to this legal matter, confiscated the entire file.

30. Plaintiff again asked both Lieutenants for the return of his legal file, but the Lieutenants repeatedly denied his request. Lieutenant Law and Lieutenant Fishel did not fill out any report or ticket regarding this occurrence and did not inform Plaintiff of why his file was taken away from him. Plaintiff filed a grievance regarding this occurrence, attached hereto as Exhibit C, along with an affidavit of another inmate corroborating Plaintiff's story. This was the first step in Defendants' scheme to prevent Plaintiff from pursuing his claim.

31. Following the confiscation of Plaintiff's legal file, on March 28, 2015, while Plaintiff was released from his cell and walking down a staircase to the cafeteria, Lieutenant Law pulled Plaintiff out of line. Plaintiff asked Lieutenant Law what Plaintiff did to cause Lieutenant Law to stop him. Lieutenant Law began screaming at Plaintiff and stated, "I will take your [expletive] to seg. because I don't like your [expletive] [expletive]." Lieutenant Law then asked Plaintiff for his inmate identification card. Lieutenant Law held the identification card inches from Plaintiff's face and broke it into pieces.

32. Lieutenant Law informed Plaintiff that he would not be able to eat his meal unless Plaintiff signed an offender authorization for payment form in the amount of $5 in order to obtain a new identification card. Plaintiff had no choice but to sign the offender authorization form, attached hereto as Exhibit D. As Plaintiff signed the form, another correctional officer

approached. Lieutenant Law made the following statement to the correctional officer: "This [expletive] wants to file a lawsuit." Plaintiff was allowed to proceed to his meal after agreeing to pay $5 for the identification card that Lieutenant Law broke. Plaintiff subsequently filed a grievance regarding this encounter on April 2, 2015, attached hereto as Exhibit E.

33.     Given Defendants' repeated attempts to prevent Plaintiff from adjudicating his claim, Plaintiff, still pro se, filed multiple discovery requests for the grievances and other documents he filed with WICC regarding the Incident, retaliatory occurrences and any video surveillance footage that captured the Incident. Plaintiff also made multiple attempts, through discovery requests and otherwise, to obtain the names of the correctional officers in charge of the shakedown during the Incident. Defendants continued on the path of preventing Plaintiff from adjudicating his claim.

34.     Defendants were adamant that Plaintiff did not file a grievance. Defendants also claimed that no such video exists because the WICC surveillance system only retains video footage for a period of 3-10 days. Thus, WICC's retention of video evidence practices would, under the best of circumstances, preserve the evidence relevant to potential claims for only 16 and 2/3 percent of the timeframe in which inmates have to put them on notice of a potential claim. Defendants have sworn via affidavit that WICC has no written policies regarding retention of video evidence, and there are no events that would trigger such retention—even the filing of an incident report or grievance. Thus, the lack of written policy indicates that WICC and its employees follow the established and accepted practice of deleting video evidence every 3-10 days. This policy, coupled with the small capacity of existing DVRs, is deliberately intended to prevent inmate access to video footage relevant to potential litigation.

35.     Defendants, adamant that Plaintiff did not submit a grievance, filed a Motion for

Summary Judgment for failure to exhaust administrative remedies. This Court scheduled a *Pavey* Hearing on July 7, 2015 regarding the issue of exhaustion. Plaintiff presented the following evidence at the *Pavey* Hearing: (1) a copy of his grievance filed on May 7, 2014; (2) a copy of his follow-up affidavit filed on July 23, 2014; and (3) testimony of Plaintiff and Plaintiff's cell mate and psychiatrist, both of whom offered testimony that corroborated Plaintiff's claim that he did, in fact, file a grievance.

36.    The Court found that, given the evidence presented, Plaintiff did file a grievance and did exhaust his administrative remedies. The Court also found that Officer Bloomfield's memory was not credible, as he claimed he could not remember signing a sworn affidavit only four months before the hearing. Defendants' witnesses, Kevin Bloomfield and Tara Goins, also gave conflicting testimony as to when Defendant Bloomfield would come into possession of grievances. Defendants were also unable to provide any explanation or evidence as to whom at the facility might have keys to the Grievance box.

37.    Accordingly, the Court denied Defendants' Motion for Summary Judgment. The Defendants destruction of key evidence, retaliatory behavior, and failure to follow their own policies and procedures, demonstrate a concerted, and coordinated effort to prevent Plaintiff from seeking and obtaining justice from this Court. In addition, their brazen mishandling of key evidence in this case led to the need for this Court to have the *Pavey* hearing in the first instance.

38.    Plaintiff also made repeated attempts to obtain the video surveillance evidence and the identities of the tactical officers assigned to the shakedown during the Incident. Defendants continued to ignore his requests and claimed that the video surveillance footage no longer existed, despite the Court's November 20, 2014 Order to preserve it. On September 24, 2015, Plaintiff filed a Motion requesting the Court to direct Defendants to specifically answer

Plaintiff's interrogatories regarding the video surveillance footage.

39.     In its Order dated December 18, 2015, this Court requested that Defendants file an affidavit by January 15, 2016 stating: (1) why the video was not preserved in anticipation of litigation; (2) the source stating video surveillance evidence should be recorded over every 3-10 days; (3) whether the recording policy has changed and, if so, when and how, and what the new policy is; and (4) whether an incident report was written regarding the Incident, and, if not, why not.

40.     On January 15, 2016, Defendants filed a Notice of Compliance with this Court's December 18, 2015 Order, including an affidavit by Timothy Megginson, Internal Affairs Lieutenant at WICC ("Affidavit"). The Affidavit, attached hereto as Exhibit F, states that video evidence of the Incident was not preserved because inmates are commonly removed for minor infractions. Affidavit ¶ 9. The Affidavit also states that the video footage is deleted every 3-10 days due to the DVR system capacity. Affidavit ¶ 12. Defendants simply ignored and did not respond to the Court's final inquiry as to whether an incident report was written regarding the Incident. There is no dispute that the video evidence has been destroyed and cannot be recovered. There is also no dispute that the Defendants took no actions to preserve the video evidence.

41.     Officer Megginson also indicated in the Affidavit that for large shakedowns like the one conducted on April 17, 2014, policies are in place for strict compliance with Correctional Officer orders.  Defendants are lined up in handcuffs, and marched with their heads down. Inmates can commonly be expected to stand, handcuffed with their heads down and facing a wall for hours at a time.  Inmates are not allowed to speak, raise their head, or make requests of the Correctional Officers at these times.  According to the Affidavit, prisoners are "often taken out

of line" for minor infractions. His Affidavit also admits that the correctional officers do not follow facility policies related to the filing of incident reports during these shake downs. The conditions created by these "off the book" policies are unusually oppressive, and create a high likelihood of prisoner discomfort and injury. As easily could have been predicted, these "off the book" procedures led to the Plaintiff's significant injuries, a failure on the part of the facility to properly record the incident, and an opportunity for the facility to cover up the excessive force targeted at the Plaintiff.

42.     In addition to destroying the video evidence, Defendants also consistently failed to provide Plaintiff with information regarding the correctional officers working the shakedown during the Incident. Defendants maintained the position that there were no responsive logs that provide Defendants the details of which officers were working on the tactical team during the Incident. Despite these assertions, upon request by undersigned counsel on February 18, 2016, Defendants provided a time-log showing which officers were on duty in certain areas of WICC on the date of the Incident—the exact information Plaintiff sought from them multiple times while prosecuting his claim pro se.

43.     The Defendants ignored, and then denied receiving a grievance on the Incident. Counter to WICC policy, Defendants did not file an incident report supporting any allegation of misconduct by Plaintiff. Defendants then refused to provide appropriate and complete discovery responses related to Plaintiff's attempt to identify the officers involved in the Incident. Defendants have even refused to appropriately comply with the Court's orders related to providing information about the destruction of the video evidence in this case. Not only did Defendants violate Plaintiff's rights, but the consistent pattern of obstructionist behavior significantly harmed and delayed the prosecution of Plaintiff's claim. Defendants continue to

assert that the incident never occurred, and yet have provided no explanation as to the reason or extent of the Plaintiff's injuries.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

44.     Plaintiff filed grievances regarding the allegations set forth herein, and took the actions set forth above. All grievances and documentation were ignored by Defendants. This Court determined at the *Pavey* Hearing on July 7, 2015 that Plaintiff exhausted all administrative remedies.

## COUNT I
### (Against Defendants Law and Miller)
### Cruel and Unusual Punishment

45.     Plaintiff adopts herein by reference the allegations contained in paragraphs 1-44.

46.     The purpose of Section 1983 is to deter state actors from using a "badge of authority" to deprive individuals of rights guaranteed by the Constitution.

47.     Defendants Miller and Law, while under the control and supervision of Lieutenant Law, used force against Plaintiff during the Incident.

48.     Defendants intentionally used extreme or excessive cruelty toward Plaintiff for the purpose of harming him.

49.     Defendants' use of force against Plaintiff was not applied in a good-faith effort to maintain or restore discipline because Plaintiff was at all relevant times acting peacefully, did not constitute a threat to the safety of the staff or inmates, and was materially cooperating with all instructions issued by the relevant correctional officers.   By accounts of Defendants' own witness, Officer Megginson, any infraction the Plaintiff could have been guilty of was so minor as to not warrant the filing of an incident report, and yet it was met with swift, excessive, malicious, and completely gratuitous violence.

50. Defendants were acting under color of law when they used extreme and excessive force against Plaintiff.

51. Defendant Law, as supervisor, allowed Sergeant Miller to use excessive force against Plaintiff and took no action to prevent, stop or remedy the excessive and malicious force.

52. Defendants' behavior is sufficiently outrageous as to shock the conscious, was purely malicious and was in violation of Plaintiff's Eighth Amendment rights.

WHEREFORE, Plaintiff prays that this Court:

a. Order Defendants liable for violations of Section 1983;

b. Order Defendants to pay Plaintiff compensatory damages in an amount of at least $100,000 to be proven at trial;

c. Order Defendants to pay Plaintiff punitive damages in an amount of at least $250,000 to be proven at trial;

d. Order Defendants to pay Plaintiff the reasonable fees and costs, including attorneys' fees, incurred by his counsel as provided for by 42 U.S.C. 1988(b) or other relevant statutory authority or case law; and

e. Order such further relief as the Court deems just and proper.

## COUNT II
### (Against Defendants Law and Fishel)
### Retaliation

53. Plaintiff adopts herein by reference the allegations contained in paragraphs 1-52.

54. Once Plaintiff filed his claim, Defendants Law and Fishel engaged in a pattern of intentional, retaliatory conduct against Plaintiff.

55. Defendants Law and Fishel intentionally confiscated Plaintiff's case file in an attempt to prohibit Plaintiff from adjudicating his claim.

56.     Plaintiff's prosecution of this claim was a reason, alone or with other reasons, that Defendants Law and Fishel relied on when they confiscated Plaintiff's case file.

57.     Defendants were acting under color of law when they confiscated Plaintiff's case file in retaliation for filing this claim.

58.     Plaintiff was unable to effectively prosecute his claim due to the confiscation of his file.

59.     Defendants' conduct caused significant harm and delay in the prosecution of Plaintiff's claim.

60.     Defendants' behavior is sufficiently outrageous as to shock the conscious, was malicious and intentional, and was in violation of Plaintiff's First Amendment rights.

WHEREFORE, Plaintiff prays that this Court:

a.   Order Defendants Law and Fishel liable for violations of Section 1983;

b.   Order Defendants Law and Fishel to pay Plaintiff compensatory damages in an amount of at least $10,000 to be proven at trial;

c.   Order Defendants Law and Fishel to pay Plaintiff punitive damages in an amount of at least $100,000 to be proven at trial;

d.   Order Defendants Law and Fishel to pay Plaintiff the reasonable fees and costs, including amounts sufficient to address Plaintiff's efforts resulting from Defendants actions and attorneys' fees, incurred by his counsel as provided for by 42 U.S.C. 1988(b) or other relevant statutory authority or case law; and

e.   Order such further relief as the Court deems just and proper.

## COUNT III
## (Against Defendant Law)
## Retaliation

61. Plaintiff adopts herein by reference the allegations contained in paragraphs 1-60.

62. Once Plaintiff filed his claim, Defendant Law engaged in a pattern of intentional, retaliatory conduct against Plaintiff.

63. Defendant Law intentionally broke Plaintiff's identification card and forced him to pay for a new one.

64. Plaintiff's prosecution of this claim was a reason, alone or with other reasons, that Defendant Law relied on when he broke Plaintiff's identification card.

65. Defendant Law's behavior was intended to intimidate Plaintiff and deter him from prosecuting his claim.

66. Defendant Law's behavior is sufficiently outrageous as to shock the conscious, was malicious and intentional, and was in violation of Plaintiff's First Amendment rights.

WHEREFORE, Plaintiff prays that this Court:

a. Order Defendant Law liable for violations of Section 1983;

b. Order Defendant Law to pay Plaintiff compensatory damages in an amount of at least $50,000 to be proven at trial;

c. Order Defendant Law to pay Plaintiff punitive damages in an amount of at least $100,000 to be proven at trial;

d. Order Defendant Law to pay Plaintiff the reasonable fees and costs, including attorneys' fees, incurred by his counsel as provided for by 42 U.S.C. 1988(b) or other relevant statutory authority or case law; and

e. Order such further relief as the Court deems just and proper.

## COUNT IV
## (Against Defendants Edgar, Miller and Mountain)
## Failure to Provide Medical Attention

67.     Plaintiff adopts herein by reference the allegations contained in paragraphs 1-66.

68.     Defendant Miller escorted Plaintiff back to his cell following the Incident and refused to provide him with medical care. Defendant Miller was deliberately indifferent to Plaintiff's serious medical condition.

69.     After the Incident and while in his cell, Defendants Edgar and Mountain walked past Plaintiff's cell, denied him medical attention and were deliberately indifferent to Plaintiff's serious medical condition.

70.     Defendants' conduct caused severe harm to Plaintiff.

71.     Defendants' acted under color law when they committed the aforementioned acts.

72.     Defendants' behavior is sufficiently outrageous as to shock the conscious, was malicious and intentional, and was in violation of Plaintiff's Eighth and Fourteenth Amendment rights.

WHEREFORE, Plaintiff prays that this Court:

a.  Order Defendants liable for violations of Section 1983;

b.  Order Defendants to pay Plaintiff compensatory damages in an amount of at least $100,000 to be proven at trial;

c.  Order Defendants to pay Plaintiff punitive damages in an amount of at least $250,000 to be proven at trial;

d.  Order Defendants to pay Plaintiff the reasonable fees and costs, including attorneys' fees, incurred by his counsel as provided for by 42 U.S.C. 1988(b) or other relevant statutory authority or case law; and

e. Order such further relief as the Court deems just and proper.

## COUNT V
### (Against Defendants Korte, Western Illinois Correctional Center and Illinois Department of Corrections)
### Denial of Access to Courts

73.     Plaintiff adopts herein by reference the allegations contained in paragraphs 1-72.

74.     Western Illinois Correctional Center has no written policy for video surveillance retention and has a practice of permanently deleting video surveillance footage every 3-10 days. WICC, Warden Korte and all other employees of WICC follow the established practice of permanently deleting video surveillance footage every 3-10 days.

75.     On information and belief, Defendant Korte, as Warden of Western Illinois Correctional Center, had knowledge of and direct participation in the video surveillance process for inmates at Western Illinois Correctional Center.

76.     The aforementioned retention practice is meant to deny the Plaintiff, and other inmates, access to vital evidence in cases alleging malfeasance by WICC and its employees.

77.     On information and belief, Defendant Korte, by his direct participation in the surveillance process and position as Warden, was aware of, consented to, and/or was deliberately or recklessly indifferent to the video surveillance practices intended to deprive adverse litigants of relevant information.

78.     Western Illinois Correctional Center's and Warden Korte's acceptance and implementation of the video retention practice represents an intentional course of conduct aimed at preventing Plaintiff, and other similarly situated inmates, from pursuing justice in this and other matters.

79.     Defendant Korte's behavior is sufficiently outrageous as to shock the conscious and was in violation of Plaintiff's First Amendment rights.

17

WHEREFORE, Plaintiff prays that this Court:

a. Order Defendant Korte liable for violations of Section 1983;

b. Order Defendant Korte to pay Plaintiff compensatory damages in an amount of at least $20,000 to be proven at trial;

c. Order Defendant Korte to pay Plaintiff punitive damages in an amount of at least $50,000 to be proven at trial;

d. Order Defendant Korte to pay Plaintiff the reasonable fees and costs, including attorneys' fees, incurred by his counsel as provided for by 42 U.S.C. 1988(b) or other relevant statutory authority or case law; and

e. Order such further relief as the Court deems just and proper.

## COUNT VI
### (Against All Defendants)
### Negligent Spoliation

80. Plaintiff adopts herein by reference the allegations contained in paragraphs 1-79.

81. It was reasonably foreseeable after the Incident, and after Plaintiff's trip to the hospital, that litigation was likely.

82. Defendants owed Plaintiff the duty to preserve the video surveillance evidence of the Incident.

83. In its ordered dated November 20, 2014, this Court ordered Defendants to preserve all video surveillance evidence.

84. Defendants breached their duty to preserve the video surveillance evidence when they deleted all such evidence.

85. Plaintiff suffered significant harm due to Defendants' destruction of the video evidence.

86. Defendants' conduct was, at minimum, a reckless disregard for the need to preserve the video surveillance evidence.

87. Defendants significantly limited Plaintiff's ability to accurately identify other John Doe Defendants.

88. Defendants deprived Plaintiff of evidence demonstrating the extent and intensity of the assault he suffered.

89. Defendants deprived Plaintiff of evidence to support his claim that the assault was unprovoked and completely out of proportion under the circumstances.

90. As a result of Defendants' conduct, Plaintiff's likelihood of success in this matter is diminished, as he cannot present highly probative evidence that would have corroborated his version of events.

WHEREFORE, Plaintiff prays that this Court:

a. Order Defendants liable for the negligent spoliation of evidence;

b. Order Defendants to pay Plaintiff compensatory damages in an amount of at least $100,000 to be proven at trial;

c. Order Defendants to pay Plaintiff punitive damages in an amount of at least $250,000 to be proven at trial;

d. Order Defendants to pay Plaintiff the reasonable fees and costs, including attorneys' fees, incurred by his counsel as provided for by 42 U.S.C. 1988(b) or other relevant statutory authority or case law; and

e. Order such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

Dated: April 7, 2016                    Respectfully submitted,

                                        DARRYL WILLIAMS


                                        */s/ Denise A. Lazar*
                                        One of His Attorneys

Denise A. Lazar (#6256147)
Anthony J. Burba
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
denise.lazar@btlaw.com
312.214.4816
tony.burba@btlaw.com
312.214.5638

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on the 7th day of April, 2016, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ashley Vincent
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 524-3889

*/s/ Denise A. Lazar*

# EXHIBIT A

| Date: 5-7-14 | Offender: (Please Print) DARRYL WILLIAMS | ID#: RO4285 |
|---|---|---|

| Present Facility: WESTERN ILLIOIS CC | Facility where grievance issue occurred: WESTERN ILLINOIS CC |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify) _____

- [ ] Disciplinary Report: ___/___/___
  Date of Report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): ON APRIL 17, 2014 IN THE ESTIMATED HOURS OF 11:45 AM AND 12:00 PM, THE TACTICAL UNIT IN ORANGE SUITS ENTERED THE HOUSING UNIT 2 WING C TO PERFORM A ROUTINE SHAKEDOWN, THE ENTIRE HOUSING UNIT INCLUDING MYSELF INMATE DARRYL WILLIAMS #04285 WERE ESCORTED TO THE WESTERN ILLINOIS FACILITY GYMNASIUM, IN WHICH WE WERE COMMANDED TO STAND AND LOOK AT THE WALL, WHILE HAND CUFFED, WE KEPT THAT POSITION FOR AROUND 2 HOURS. WE WERE THEN ORDERED TO MARCH BACK TO THE HOUSING UNIT WITH OUR HEADS DOWN. AS THE MARCHING LINE APPROACHED THE HOUSING UNIT 2 ENTRANCE I DARRYL WILLIAMS #RO4285 COMPLIED WILL ALL ORDERS AND COMMANDS THAT WERE GIVEN BY THE TACTICAL UNIT. BUT I DARRYL WILLIAMS #R04785 WAS SUDDENLY PULLED OUT OF THE LINE BY MY NECK AND HEAD AREA BY SEVERAL TACTICAL UNITS IN ORANGE SUITS AND RAMMED IN TO THE GATE, WHICH CAUSED OTHER TACTICAL UNITS TO ATTACK ME, TWO TACTICAL UNITS IN ORANGE SUITS →

Relief Requested: I REQUEST DISCIPLINARY ACTION AGAINTS THE TACTICAL UNITS SUPERVISOR LT. LAW AND OTHER TACTICAL UNITS OFFICERS WHICH IDENTIFICATION WAS WITHHELD

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Offender's Signature | ID# RO4285 | Date 5-7-14 |
|---|---|---|

(Continue on reverse side if necessary)

| **Counselor's Response (If applicable)** |
|---|

Date Received: ___/___/___  [ ] Send directly to Grievance Officer  [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | ___/___/___ Date of Response |
|---|---|---|

| **EMERGENCY REVIEW** |
|---|

Date Received: ___/___/___  Is this determined to be of an emergency nature?
[ ] Yes; expedite emergency grievance
[ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | ___/___/___ Date |
|---|---|

C.C. File

Continued to hold my neck and head area, pushing my head downwards, in a dipping motion till my head almost reached my knees, simultaneously, 2 other tactical units, officers while I Darryl Williams #R04285, was still handcuffed, one grabbed my left arm and the other one grabbed my right arm, both lifting my arm upwards as far enough to cause me to suffer arm and wrist injuries. I Darryl Williams R04285 then screamed "MY ARM". Then several tactical units in orange suits yelled "SHUT UP" in which caused tactical units in orange suits to poke me in the back using extreme force. After receiving pokes in the back with the tactical unit baton, I Darryl Williams #R04285 was then ordered to spin around while 2 tactical units in orange suits continued to hold my neck and head area down, while 2 other tactical units in orange suits held my arms upwards, walking me Darryl Williams #R04285 backwards towards the wing C and then I was forcibly shoved back to cell 27.

My grievance is towards the tactical unit because of the extreme excessive force used against me unnecessary and brutal, violating my 8th Amendment right concerning cruel and unusual punishment. Because of the forceful actions used by the tactical unit, my hand was severely swollen, accompanied by excruciating back pain. Medical attention was given after I Darryl Williams #R04285 requested it. I was seen by medical staff here at Western Illinois CC on April 17, 2014, for hand and back injuries. On April 19 2014, I Darryl Williams #R04285 was sent out to an outside hospital for xrays on my hand because of severe swelling of the hand, while my back injuries are still under medical observation. On April 21 2014, I Darryl Williams #R04285 was attended by medical staff in Western Illinois CC. I continued to be under medical care and observation for hand and back injuries.

The tactical unit directly violated my constitutional right to cruel and unusual punishment, using unnecessary excessive force. It is clear that the tactical unit over-stepped their tactics causing me severe pain and injuries. It is specially clear because no incident report was documented by the tactical unit as a form of misconduct on my behalf. It is procedure to report any misconduct performed by inmates. In this case it is clear and obvious that I Darryl Williams #R04285 did nothing to deserve such brutal treatment by the tactical unit. Because of this combined with the suffering, pain, distress, along with physical and mental depression, the requested relief should be granted.

C.C. H.

# EXHIBIT B

STATE OF ILLINOIS)
)  ss.
COUNTY OF *Brown* )

**AFFIDAVIT**

I, *Darryl Williams*                    , being first duly sworn upon oath do
hereby depose and state that the folling statements are true and correct.  I
further state as follows:

I Darryl Williams Filed A grievance 5-7-14
and I Still Haven't Heard or received My Grievance
Back and it's Been over 60 days. I will appreciate
it if You can respond to My grievance so I can move
Forward with my process.

                    Thank You

                    Darryl Williams
                    #RO4285
                    2-C-34

Signed and sworn before me
this 23 day of July, 2014

Michele Olson

NOTARY PUBLIC

OFFICIAL SEAL
MICHELE OLSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/22/18

/s/ Darryl Williams
Affiant

                    Pro-se.

# EXHIBIT C

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 3-9-15 | Offender: (Please Print) Darryl Williams | ID#: R04285 |

Present Facility: Western C.C. | Facility where grievance issue occurred: Western C.C.

**NATURE OF GRIEVANCE:**

- [x] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [x] Staff Conduct
- [ ] Dietary
- [ ] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [x] Other (specify): privilege mail

- [ ] Disciplinary Report: ____/____/____
  Date of Report       Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    Chief Administrative Officer, only if EMERGENCY grievance.
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On February 10 2015 At The estimated Hour of 2:20pm and 2:35 pm School line was returning Back into R3 wing D when inmate Brian Berry #M28628 approached the cell I Darryl Williams #R04285 was assign to 72 and asked For the criminal case laws I previously told Him I will let Him see Because those case laws can possibly Help Him with His situation. Before He went into His cell which was 74 to lock up. I Darryl Williams #R04285 Rushed to My legal Box to give Him The legal Documents that

Relief Requested: I will like My legal Documents Return Back I Darryl Williams #R04285 By Lt. Fishel or Western C.C.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ Offender's Signature | R04285 | 3 , 9 , 2015 |
| | ID# | Date |

(Continue on reverse side if necessary)

## Counselor's Response (if applicable)

Date Received: ____/____/____
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |

## EMERGENCY REVIEW

Date Received: ____/____/____    Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |

He ask For, and mistakely gave Him My Legal Documents That was in A legal Envelop containing A law suit that is pending against Lt. Law of the western C.C. Once I Redize I Handed inmate Brian Berry #M28628 The wrong Legal Envelop, I told inmate Brian Berry #M28628 to give The legal envelop Back, and That's when Lt. Fishel seen inmate Brian Berry #M28628, and confiscated My Legal Documents. I Darryl Williams #R04285 Immediately said to Lt. Fishel That The legal Documents was mine and identify myself By stating My name Darryl Williams #R04285 and Cell 72 in which all My information was on the legal envelop and As well As the legal Documents That was inside. Lt. Fishel looked inside The legal envelop containing I Darryl Williams #R04285 Legal Documents and observed The legal Documents was lawsuit against his co-worker Lt. Law and Lt. Fishel Begin walking off R3 wing to Never Return my Legal Documents Nor A ticket explaining what Rule I Violated in western correctional center.

STATE OF ILLINOIS )
                       ) SS.
COUNTY OF          )

## AFFIDAVIT STATEMENT

The undersigned, being first duly sworn upon oath, hereby states that the following statement is true and correct in substance and in fact. Said statement is as follows:

I BRIAN BERRY # M28628

On 2-10-15 at or around 7:35 pm upon returning from School before I locked up in my assigned cell. 3-8-74 I asked Inmate Darryl williams # R04285 to give me the criminal case law I previously asked him for in order to research my legal situation. He responded, give me a second, then all of the doors on the wings opened and he gave me An envelope. As I was going in my cell Inmate williams R04285 said I gave you the wrong envelope give it back to me. I tried to give it to him Real quick and that when Lt fisher came an took the envelope with Inmate williams R04285 legal documents inside. Inmate williams R04285 Identified himself by his name and ID number trying to explain to Lt fisher that the envelope with his legal work Inside of it belonged to him. Lt fisher looked at the contents of the envelope then Just walked off Ignoring Inmate williams pleas never returning. neather a ticket or a shake down; slip was secved to. myself or Inmate williams R04285 OUT DATE 4/17/17
Content ADRESS 128 W 103 Pl Chi, ILL, 60628

FURTHER AFFIANT SAYETH NOT.

/s/ _Brian Berry_

Subscribed/attested to before me
this 2 day of April , 2015 .

_Michele Olson_

NOTARY PUBLIC

OFFICIAL SEAL
MICHELE OLSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/22/18

# EXHIBIT D

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Authorization for Payment

Posting Document # _____ Date ___3/30/15___

Offender Name ___Williams, Darryl___ ID# ___R04285___ Housing Unit ___3D72___

Pay to <u>State of Illinois</u> _WTCC_

Address _____

City, State, Zip _____

The sum of ___85___ dollars and ___NO___ cents charged to my trust fund

account, for the purpose of ~~Legal copies @ 10 cents each.~~ _New ID damaged_ ___(L)___

☐ I hereby authorize payment of postage for the attached mail. ☐ I hereby request information on electronic funds transfers to be placed in the attached mail.

Offender Signature X _____ ID# X ___R04285___

Witness Signature _____

☐ Approved ☐ Not Approved Chief Administrative Officer Signature _____

Postage applied in the amount of _____ dollars and _____ cents.

Distribution: Business Office, Offender, Mail Room

_Printed on Recycled Paper_

DOC 0296 (Eff. 1/2006)
(Replaces DC 828)



# EXHIBIT E

ILLINOIS DEPARTMENT OF CORRECTIONS
# OFFENDER'S GRIEVANCE

| Date: 4-2-15 | Offender: (Please Print) Darryl Williams | ID#: R04285 |
|---|---|---|

| Present Facility: Western C.C. | Facility where grievance issue occurred: Western C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____
  Date of Report       Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On March 28 2015 at the estimated Hour of 5:07 pm and 5:18 pm I Darryl Williams #R04285 was Let out of My assign cell 72 to go eat. I was observed By Lt. law on my way walking down the steps. I was told By Lt. law who was standing in the Middle of the Staircase to step to the side mr. williams. I immediately ask Lt. law what did I do wrong. That's when Lt. law Begin Threating and Being verbally abuseive to Me By

Relief Requested: I asked that Lt. law Be suspended without paid From any where From a day to a month Because of His abuseive of authories and I Be Tranfer to another instutution, and I Be compensated for my ID car.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ | R04285 4, 2, 15 |
|---|---|
| Offender's Signature | ID#     Date |

(Continue on reverse side if necessary)

---

## Counselor's Response (if applicable)

Date Received: ____/____/____
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response ____/____/____ |
|---|---|---|

---

## EMERGENCY REVIEW

Date Received: ____/____/____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date ____/____/____ |
|---|---|

Saying, Don't Question Him, I will take Your Ass to Seg, Because I don't like Your Fucking Ass, and told I Darryl Williams # R04285 to give Him My I.D Card, so I gave it to ~~Him and~~ And Lt. Law look Me Into My Face and Broke My I.D Card into pieces Lt. Law then said to I Darryl Williams # R04285 turn around and go Back to Your Fucking cell Becaus Your not going to eat unless I want a Ticket. Lt. Law) walk down The Stairs, and went out Into the foyer of R3 and Return Back to D wing where I was with a Money Voucher and Walk I Darryl Williams # R04285 to My assign cell # 12 to get an pen so I Darryl Williams # R04285 can sign The Money voucher to pay for another I.D card in which I didn't Broke or lose. As I Darryl Williams # R04285 signing The Money Voucher A c/o walk up and Lt. Law said to Him this Asshole want to File Lawsuit. Lt. Law whole reason for threating and Harassing I Darryl Williams # R04285 is Because I Have a pending Lawsuit against Lt. Law and 6 other tactical unit officers Because extreme excessive force used against I Darryl Williams # R04285 in which resulted in I Darryl Williams # R04285 going to an outside Hospital. Lt. Law Breaking My I.D card and depriving I Darryl Williams # R04285 the Right to eat violating My 8th and 14th amendment.

# EXHIBIT F

)
)

## AFFIDAVIT

I, **TIMOTHY MEGGINSON**, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.    I am currently employed by the Illinois Department of Corrections as a Lieutenant at Western Illinois Correctional Center in Internal Affairs. I began employment with the Western Illinois Correctional Center in 1998.

2.    As a Lieutenant in Internal Affairs I am responsible for the investigation of unusual incidents at Western Illinois Correctional Center (Western).

3.    From 1998 to 2014, I was a member of the tactical team. Also, I was the Assistant Commander of the tactical team for approximately a total of 5 years.

4.    I am familiar with the video surveillance system at Western.

5.    I am familiar with the procedures used in a tactical shakedown.

6.    On April 17, 2014, a tactical shakedown of housing unit 2, wing C occurred. Typically, when inmates are moved, for safety and security reasons, only fifty-eight inmates are moved at a time.

7.    However, during a tactical unit shakedown, such as the one at issue in this case, approximately one hundred and twelve inmates were moved.

8.    Due to the amount of inmates per officer and the nature of this type of movement, more strict tactical, safety, and security measures are taken. For example, inmates are ordered to not talk, to not yell, to not interact with other inmates, and to look down.

9.     This type of movement also requires heightened security measures and more strict rules because in these types of movements, inmates of opposing gangs may be a part of the same movement or inmate on another inmate's keep safe away from list may also be moved during the same shakedown. It is important for inmates to follow the rules for the safety of all inmates and staff.

10.     It is not uncommon for inmates to be removed from the movement for failing to follow orders such as no talking or no looking around at other inmates. If an inmate is seen looking around or even accidentally bumps into another inmate and apologizes, that inmate will be removed by tactical officers. The inmate will be escorted backwards, back to a cell. Inmates will be removed for minor infractions such as those described above. It is not uncommon for an incident report or a disciplinary report to not be written in those types of situations.

11.     Further, if an incident as described in Paragraph 9 occurs, video footage of the incident is not preserved due to how commonly inmates are removed for minor infractions.

12.     There is no rule or regulation stating video footage is to be recorded over every three to ten days. At the time this alleged incident occurred, video footage was recorded over every three to ten days because of the data storage capability of the facility's digital video recorder (DVR) equipment.

13.     Since this alleged incident, the institution has added ten more cameras to the facility and two more DVRs. A DVR can hold only so much data at a time, just like a DVR many people have in their homes.

14.     Once the DVR reaches full data capacity, it begins to record over old footage. This is the reason footage in this case was recorded over.

15.    At this time, it is uncertain as to how often the data on the DVRs will record over itself because more DVRs have been added.

16.    Western currently has fifty-seven cameras covering the facility. Western's goal is to have 90% video surveillance coverage of the facility. Western was recently approved for a grant. Once Western receives the funds, more cameras and DVRs will be added.

FURTHER AFFIANT SAYETH NOT.

/s/ Timothy Megginson

Timothy Megginson

SUBSCRIBED and SWORN to

before me this _15th_ day of _January_, 2016.

/s/ Julie A. Houston

Notary Public

OFFICIAL SEAL
**JULIE A. HOUSTON**
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires June 13, 2016

| | |
|---|---|
| **From:** | Vincent, Ashley <AVincent@atg.state.il.us> |
| **Sent:** | Tuesday, March 08, 2016 5:08 PM |
| **To:** | Burba, Anthony |
| **Cc:** | Luisi, Laura; Lazar, Denise |
| **Subject:** | RE: Williams Discovery and Amended complaint |

Hi Tony:

I am writing in response to your email regarding your intended amendments to Plaintiff's Complaint. Below please find my objections and comments to each respective item:

1. No objection, as it appears you are only clarifying this claim;
2. Objection. My clients object to this, as there was no duty to preserve at the time of the alleged incident;
3. Objection. My clients object to the extent this claim is not directly related to this case. My clients further object to the extent Plaintiff will be naming new defendants. If Plaintiff wants to add a new claim with new defendants, it is our position he should file a separate lawsuit; and
4. Objection. Entities cannot be sued under 1983. Respondeat superior does not apply to actions filed under 1983.

Although I understand your hope to avoid litigation regarding this issue, I have to do what is in the best interest of my clients. I would appreciate it if you would mention in your motion to amend that Defendants objected. If you have any further questions or concerns, please call me.

Sincerely,

Ashley Vincent
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 524-3889

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only.  This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law.  If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system.  If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited.  Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General.  Thank you for your cooperation.

From: Burba, Anthony [mailto:Tony.Burba@btlaw.com]
Sent: Monday, March 07, 2016 11:52 AM
To: Vincent, Ashley

Ashley,

Thank you for your patience. At this time, we would like to file an amended complaint in the case and address several claims and parties that we feel we cannot proceed without. It is our expectation that the Court would grant leave for such an amendment, as our client has only recently retained counsel, the parties and claims are essential to the litigation, and there has only to this point been one amendment. We are reaching out in hopes that we can avoid any unnecessary litigation of this issue, since, as you are aware, Court's are encouraged to grant such amendments freely. The amended complaint would cover the following:

1. Restate the excessive force claim against your client and identify additional John Does;
2. Bring a negligent spoliation claim against the facility for failure to retain the video evidence in this case;
3. Bring a first amendment claim related to retaliatory actions taken by your client and other officers at WICC in response to our client's lawsuit; and
4. Bring an additional 1983 action against the facility and/or IDOC for negligent supervision/improper policies and procedures.

Thank you in advance for your time and consideration of this matter. We would appreciate a response as soon as possible, and ideally by Wednesday. If we have not received word by Friday we will file for leave of the Court. Please feel free to call with any questions or concerns.

Tony

**Anthony Burba** | Partner
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400, Chicago, IL, 60606-2833
1717 Pennsylvania Avenue NW, Suite 500, Washington, D.C. 20006-4623
Direct: (312) 214-5638 | Mobile: (847) 420-8084 | Fax: (312) 759-5646



Atlanta | Chicago | Delaware | Indiana | Los Angeles | Michigan | Minneapolis | Ohio | Washington D.C.

---

From: Vincent, Ashley [mailto:AVincent@atg.state.il.us]
Sent: Thursday, March 03, 2016 1:48 PM
To: Burba, Anthony
Cc: Luisi, Laura; Lazar, Denise
Subject: RE: Williams Discovery and Amended complaint

Tony:

I am writing to inform you that Western IL CC does not have any facility specific grievance procedural rules. However, I have attached the department rules and administrative directives regarding the grievance procedure. I also attached a copy of an administrative directive that deals with the use of cameras and related equipment. Lastly, please send me a brief statement regarding the claims you intend to add to this case at your earliest convenience. Please call me if you have any questions or concerns.

Sincerely,

Ashley Vincent
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 524-3889

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only.  This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law.  If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system.  If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited.  Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General.  Thank you for your cooperation.

From: Burba, Anthony [mailto:Tony.Burba@btlaw.com]
Sent: Monday, February 29, 2016 4:29 PM
To: Vincent, Ashley
Cc: Luisi, Laura; Lazar, Denise
Subject: Williams Discovery and Amended complaint

Ashley,
I am following up regarding our conversation of two weeks ago.  We were hoping to get a response from you regarding whether you would oppose an amendment to the Complaint by last Thursday and are awaiting responses to our discovery requests today.  Can you please provide an update on these two items?  We have two weeks to file any motions to compel, and would certainly like to avoid any unnecessary briefing.  Thank you in advance for your update.

Tony


Anthony Burba | Partner
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400, Chicago, IL, 60606-2833
1717 Pennsylvania Avenue NW, Suite 500, Washington, D.C.  20006-4623
Direct: (312) 214-5638 | Mobile: (847) 420-8084 | Fax: (312) 759-5646



BARNES &
THORNBURG LLP

Atlanta | Chicago | Delaware | Indiana | Los Angeles | Michigan | Minneapolis | Ohio | Washington D.C.


CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product

3

privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.